FILED

Dec 15   10 14 AM '03

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

U.S. DISTRICT COURT
NEW HAVEN, CONN.

| | | |
|---|---|---|
| LEBERT THOMAS, | : | CIVIL ACTION NO. 3:02CV457 (MRK) |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| THE METROPOLITAN DISTRICT | : | |
| COMMISSION, | : | |
| Defendant | : | DECEMBER 12, 2003 |

## PLAINTIFF'S LOCAL RULE 56(A)2 STATEMENT

The Plaintiff, Lebert Thomas, respectfully submits the following memorandum

pursuant to Local Rule 56(a)2 (formerly Rule 9(c)2) of the Connecticut District Courts.   This

memorandum responds to the Local Rule 9(c)1 Statement submitted by the Defendant,

Metropolitan District Commission ("MDC").

As to the paragraphs contained in the Defendant's Local Rule 9(c)1 Statement:

1. Admitted.

2. Admitted.

3. Admitted.

4. Admitted.

5. Admitted.

6. Admitted.

7. Admitted.

8. Admitted.

9. Admitted.

10. Admitted.

11. Admitted.

12. Admitted.

13. Admitted.

14. Denied.  (Affidavit of Lebert Thomas, attached to Objection to Summary Judgment as Exhibit G, ¶ 13).

15. Admitted.

16. Denied.  (Affidavit of Robert Zaik, attached to Defendant's Motion for Summary Judgment as Exhibit A, ¶ 6).

17. Admitted.


## DISPUTED ISSUES OF MATERIAL FACT

The following genuine issues of material fact remain to be tried:

1.  Robert Moore ordered Richard Newton to sit in on interviews conducted by the Plaintiff for no legitimate reason.  The Plaintiff did not request any assistance with these interviews, nor was Richard Newton informed of the reason why Robert Moore wanted him to be present.  None of the white managers at the MDC were subjected to such treatment.  Moore's actions were a method of retaliating against the Plaintiff for his testimony in the Sharon Harper case or were motivated by racial animus.  (Affidavit of Lebert Thomas, attached to Objection to Summary Judgment as Exhibit G, ¶¶ 6-7;

deposition of Richard Newton, attached to Objection to Summary Judgment as Exhibit J, pp. 68, 73).

2.  The Plaintiff's authority as a manager was deliberately undermined by his supervisors when he was not allowed to determine where an employee under his supervision would be seated.  The managers at MDC generally have the authority to place personnel as they see fit, but when the Plaintiff placed Daisy Chavez in a vacant cubicle, Neil Geldof ordered her to move out of the cubicle within a couple hours without any justification. No other managers suffered such a deliberate attack upon their authority as occurred here.  (Thomas, ¶ 9; Newton, pp. 28-29, 80-81; deposition of Cornelius Geldof, attached to Objection to Summary Judgment as Exhibit K, pp. 149-51).

3.  Robert Moore assigned Steve Paul to coordinate the Water Distribution Modeling Project.  Steve Paul is a white, non-Hispanic male.  This was a project that the Plaintiff, as the manager of engineering services, would normally coordinate.  Robert Moore was aware that the Plaintiff was the person who was coordinating the project.  Mr. Paul had no background in engineering and no knowledge of water distribution.  There was no legitimate, non-discriminatory or non-retaliatory reason for replacing the Plaintiff as coordinator of this project with Steve Paul, who was not qualified to coordinate the project.  (Thomas, ¶ 8; Newton, pp. 40-41, 45-46; deposition of Jennifer Ottalagana, attached to Objection to Summary Judgment as Exhibit L, pp. 18-19).

4.  When the Plaintiff requested that his position be reclassified due to the addition of several large functions and responsibilities, his supervisor, Neil Geldof, told the

Plaintiff that he would throw any such request in the garbage.  It was contrary to the

Defendant's standard procedures for Geldof to refuse to sign the Plaintiff's request and

to threaten to throw the request in the garbage.  Although other employees of the

Defendant are routinely awarded retroactive pay when their requests for reclassification

are granted, the Defendant will not award such retroactive pay to the Plaintiff if his

position is reclassified in the future.  (Thomas, ¶ 12; Geldof, pp. 140-41; Ottalagana,

pp. 58-59; deposition of Robert Zaik, attached to Objection to Summary Judgment as

Exhibit M, pp. 78-82; deposition of Robert Moore, attached to Objection to Summary

Judgment as Exhibit N, pp. 199-202).

5.  The Plaintiff's supervisors have not recommended an upgrade in his salary from EE-16

   to EE-18.  (Thomas, ¶ 13).

6.  The Plaintiff's supervisors have ordered the Plaintiff to attend public meetings as a

   representative of the Defendant based solely on the Plaintiff's race.  When the

   Plaintiff's white, non-Hispanic supervisors did not want to attend meetings in the

   predominantly minority North End of Hartford, the Plaintiff was ordered to attend.

   Generally, the Plaintiff would not be ordered to attend meetings in the majority white

   South End of Hartford.  The Plaintiff was asked, however, to attend a town council

   meeting in Wethersfield to testify about projects in the North End of Hartford which the

   Defendant claimed was taking money away from the Wethersfield Cove projects.

   Robert Moore explained that he wanted to use the Plaintiff for his color.  (Thomas, ¶

14; affidavit of Luis Alvarado, attached to Objection to Summary Judgment as Exhibit I, ¶¶ 7-9).

7. On the day that the verdict in the case of Sharon Harper versus the Defendant was announced, Neil Geldof called the Plaintiff from a golf course, using a cell phone. Geldof told the Plaintiff not to incite trouble. Besides his testimony in the Harper trial, the Plaintiff had not done anything that would have caused Geldof or others to believe that he was going to incite trouble. (Thomas, ¶ 5).

8. On January 24, 2001, Neil Geldof and the Plaintiff were in a meeting with several other managers and supervisors of MDC when, during a project discussion, Geldof stood up, charged to where the Plaintiff was sitting, yelled and screamed loudly at him, pointed his finger and raised his fist a few inches from his face, tore up a document directly in front of him and made a derogatory comment as to what to do with the paper he had just torn up. The Plaintiff believed that Geldof was going to attempt to physically harm him and that he would need to protect himself from physical contact by Geldof. Geldof never actually apologized to the Plaintiff for this behavior. (Thomas, ¶ 10; Newton, pp. 55-56, 58; Ottalagana, pp. 25-27, 31-32; Zaik, pp. 147-48).

9. When the Plaintiff complained to the head of Human Resources, Geldof again confronted the Plaintiff in a threatening manner, only this time accompanied by Mr. Gallicchio, then-Chairman of the MDC. This was not a chance meeting, and Gallicchio had no other business in the Engineering and Planning Department besides the intentional intimidation of the Plaintiff. Geldof said, "You are the man we have been

## **CERTIFICATION**

I hereby certify that a copy of the foregoing has been mailed this 12TH day of December, 2003 to the following counsel of record:

Anthony J. Palermino, Esq.
Law Offices of Anthony J. Palermino
945 Wethersfield Avenue
Hartford, CT 06114

Stuart E. Brown