UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LEBERT THOMAS,<br>　　　Plaintiff, | :  CIVIL ACTION NO.<br>:  3:02-CV-00457 (MRK)<br>: |
| v. | : |
| THE METROPOLITAN DISTRICT<br>COMMISSION,<br>　　　Defendant. | :<br>:<br>:  OCTOBER 1, 2004 |

**DEFENDANT'S MEMORANDUM RE: OBJECTIONS TO
ADMISSIBILITY OF LEVY & DRONEY REPORT**

At the request of the Court, the defendant, Metropolitan District Commission, hereby submits this memorandum on its objections to the document that the parties have called "the Levy & Droney Report,"[1] which the plaintiff seeks to admit into evidence at trial. For the following reasons, the Levy & Droney Report should be excluded from evidence.

**I.    The background for and contents of the Report.**

In November, 2001, the MDC Board of Commissioners hired the law firm of Levy & Droney, P.C., to conduct a compliance audit of its employment practices in response to employee complaints of possible "forms of race discrimination and/or retaliation" at the MDC. The purpose of the audit ostensibly was to investigate the MDC's compliance with its existing policies not to discriminate against any employee because of race, ancestry, color, creed, national origin, sex, age, physical disability, union membership or activity. The audit also sought to

determine whether the MDC was in compliance with its anti-discrimination policy as it related to wages, hours, and conditions of work. See Report pp. 2-3.

The audit encompassed all MDC employees, management, union and non-union members, and included all MDC locations. Counsel from Levy & Droney reviewed all MDC policies, procedures, and practices, as well as (a) all pending, dismissed, and settled legal matters, (b) the complete charter of the MDC, (c) the MDC Annual Report for the fiscal year ended December 31, 1999, (d) documents describing the MDC's administration, the MDC's director and committee listing, its holdings, including land, reservoirs, hydro-electronic plants, and water treatment facilities, (e) the current employee handbook and draft employee manual, (f) several policy directives that commented on employment practices, including draft directives, (g) the existing MDC Affirmative Action Plan, and its supplement, (h) the MDC's 2001 strategic plan, (i) the hiring and promotional practices of the MDC, (j) the three operative union contracts, (k) the MDC's response to certain complaints contributing to the Board's decision to conduct an audit, and (l) the breakdown of "Total Dollars Awarded to MBE/WBE Enterprises." Report pp. 8-10. Counsel from Levy & Droney also conducted interviews of approximately 38 employees, as well as several Board members, and twice met with members of a special Blue Ribbon Commission created to oversee the audit. Report p. 11. At the conclusion of the audit, Levy & Droney issued a fifty (50) page written report of its findings and recommendations, entitled

---

[1] At the pretrial conference held on September 22, 2004, the plaintiff's counsel indicated that they would provide the Court with a complete copy of the Levy & Droney Report. Based on that representation, the MDC has not attached a copy of the Report as an exhibit to this Objection.

"Compliance Audit of Employment Practices of the Metropolitan District Commission Undertaken By Legal Counsel," dated March 15, 2002.

The plaintiff's allegations in this matter were not the subject of the compliance audit, nor were they addressed in the Levy & Droney Report. Notably, neither the conclusions nor the recommendations in the Levy & Droney Report pertain specifically to the plaintiff's employment or his allegations in this case. While the Report addresses briefly discrete issues germane to the Engineering Department in which he worked, that discussion appears unrelated to the subject matter of the plaintiff's current litigation.

## II. The Report is inadmissible because the plaintiff failed to list any witness who can authenticate the Report or explain it in order to support its admission into evidence.

As pointed out by the MDC at the pretrial conference, the plaintiff did not identify any witness who could authenticate the Levy & Droney Report or lay a proper foundation for its admission. In order to admit the Report, the plaintiff is required, as a condition precedent, to authenticate the report through testimony of a witness with knowledge. Fed. R. Evid. 901(a) & (b)(1). The Report appears to have been prepared by John Rose, Jr., Lisa Zaccardelli, and John Droney, of the law firm of Levy & Droney, P.C. See Report p. 50. The Report appears to have been addressed to MDC Commissioner Marilyn Cohen, see Report p. 1; though the exhibit sought to be offered by the plaintiff appears to include a letter dated April 2, 2002 addressed to Albert Reichin, Chairman of the MDC, and describing certain corrections to be made to the Report. None of these people were listed on the plaintiff's witness list.

During the pretrial conference, counsel for the plaintiff suggested that one of its listed witnesses, Daisy Chavez, could offer testimony to support the admission of the Levy & Droney Report. Counsel for the plaintiff represented that Ms. Chavez had viewed a draft of the Report. However, Ms. Chavez is not an attorney, was at no time a member of the law firm of Levy & Droney, P.C., and does not appear to have otherwise been involved in conducting the audit or preparing the Report. Accordingly, Ms. Chavez is not competent to provide testimony to support a proper foundation for the admission of the Levy & Droney Report. The Report is not admissible because the plaintiff is unable to authenticate it through testimony of a witness with knowledge.

### III.     The Report is inadmissible because it is irrelevant to the plaintiff's claims.

"Evidence which is not relevant is not admissible." Fed. R. Evid. 402. Relevant evidence "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

The Levy & Droney Report does not meet the requirements of Rules 401 and 402 because it does not pertain in any respect to the plaintiff's specific allegations in this case. The plaintiff claims the following as adverse employment decisions: requesting that the plaintiff's superior sit in on interviews conducted by the plaintiff, countermanding the plaintiff's decision regarding projects handled by him, failing to invite the plaintiff to meetings, overruling the plaintiff's decision regarding the placement of personnel in work areas, reassigning work traditionally

performed by the plaintiff's position, requesting that the plaintiff attend meetings with MDC customers, yelling at the plaintiff, speaking with the plaintiff on the day of the Sharon Harper verdict, and rejecting a reclassification of the plaintiff's position. The Levy & Droney Report does not address any of these claims. Accordingly, the admission of the Report does not make the existence of any fact that is of consequence to the plaintiff's claims in this case more or less probable. The Report is irrelevant and should be excluded.

IV.    **The Report is inadmissible because it is based on, and contains, hearsay.**

The Report, and the statements attributed to unnamed declarants contained in the Report, are hearsay and, therefore, inadmissible. Fed. R. Evid. 801(c), 802. Hearsay evidence is only admissible if it falls into one of the narrow exceptions to the hearsay rule. Fed, R. Evid. 803, 804. At the pretrial conference, the plaintiff's counsel suggested that the Report is admissible as a business record. The Report does not qualify as a business record or as an admission of a party opponent.

A.    **The Report does not constitute a business record.**

The Levy & Droney Report was generated following a special audit of the MDC's employment practices by outside counsel. The Board of Commissioners hired outside counsel to conduct the audit specifically to respond to several employee complaints. As such, the Report does not qualify for the business record exception to the hearsay rule.

In Paddack v. Dave Christensen, Inc., 745 F.2d 1254 (9th Cir. 1984), the court considered whether a compliance audit report prepared by Touche Ross & Company, the defendant

employer's outside accountants, was admissible. In that case, the plaintiffs claimed that the employer breached several collective bargaining agreements by failing to make contributions to certain welfare and pension funds. The plaintiff sought to admit the compliance audit to show the amounts of the fund deficiencies. The trial judge excluded the audit report because it was based on hearsay and was not admissible under any exception to the hearsay rule. The Ninth Circuit agreed that the audit reports were based on hearsay and did not constitute business records. The audit report was not "a regularly conducted business activity," was not "kept in the regular course" of the employer's business, was not "the regular practice of that business" to make the report, and was not made or made from information transmitted by "a person with knowledge" as required by Fed. R. Evid. 803(6).[2] As explained by the Ninth Circuit:

> We also believe that the compliance audit reports cannot be viewed as the business records of Touche Ross. This was not a regularly conducted audit of the Employer; it was a special audit ordered in response to the Trustees' suspicion of irregularities. These reports, which are the direct product of the accountants, are not "business records" of the accounting firm within the meaning of Rule 803(6). A contrary interpretation would allow any firm to produce "business records" that would be automatically admissible. Such reports do not contain the same reliability that normally attends records kept in the course of a regularly conducted business activity.

Id. at 1258 (footnote omitted).

The Levy & Droney Report similarly fails to qualify for the business record exception to the hearsay rule. There is no suggestion that preparing the Levy & Droney Report was a

---

[2] The Ninth Circuit ruled that the audit report should have been admitted under Rule 703 "only for the limited purpose of explaining the basis" of the accountant's expert opinion. 745 F.2d at 1262-63 (emphasis in original). The plaintiff in this case did not disclose any expert witnesses nor has he claimed that the Levy & Droney Report is admissible in connection with any expert testimony.

regularly conducted business activity, that it was the kind of report kept in the regular course of the MDC's business, that it was the regular practice of the MDC to make that report, and that the report was prepared by a person with knowledge. Like the Touche Ross audit in Paddack, the Levy & Droney Report was a "special audit" ordered by the MDC Board. Also like the Touche Ross audit, the Levy & Droney Report does not contain the indicia of trustworthiness to be considered reliable as a business record.

### B. The Report does not constitute an admission of a party opponent.

In addition, any attempt to show that the Report is an admission of a party opponent fails because the plaintiff cannot show that Levy & Droney, P.C. attorneys were authorized agents of the MDC for purposes of communicating the audit results. The MDC's attorneys were not speaking for the MDC; they were speaking to the MDC.

As noted above, the plaintiff did not list any witness capable of introducing evidence to prove that Levy & Droney, P.C. attorneys were authorized to speak as agents of the MDC in the Report. It is axiomatic that hearsay statements cannot be used to establish an agency relationship under Rule 801(d)(2)(D). U.S. v. Jones, 766 F.2d 412, 415 (9th Cir. 1985); Gallo v. Crocker, 321 F.2d 876, 877 (5th Cir. 1963). The MDC's hiring of Levy & Droney, P.C. was akin to hiring an expert witness and experts are not agents for purposes of Rule 801(d)(2)(D). Kirk v. Raymark Industries, Inc., 61 F.3d 147, 164-65 (3d Cir.), cert. denied, 516 U.S. 1145 (1995) (expert witness hired by opposing party is not an agent for allowing statements to be admitted as agents of a party opponent).

Even if the Court were to find that the Report was a statement of an agent of a party opponent, most of the Report contains inadmissible hearsay and nonetheless should be excluded in its entirety. Statements from unnamed declarants are hearsay. Williams v. Pharmacia, Inc., 137 F.3d 944, 950-51 (7th Cir. 1998) (statements by plaintiff's co-workers about their poor treatment by supervisor are hearsay given that they were not the employer's agents for making employment decisions); Evans v. Port Authority of New York, 192 F. Supp. 2d 247, 262-65 (S.D.N.Y. 2002) (employees' statements about employer in discrimination case were outside the scope of their employment and hence were inadmissible hearsay); Teamsters, Chauffeurs, Warehousemen & Helpers, Local Union No. 182 v. New York State Teamsters Council Health & Hosp. Fund, 909 F. Supp. 102, 110 (N.D.N.Y. 1995) (statements against employer by union employees who also served as trustees of retirement fund were inadmissible as agents of party opponent because the court could not tell whether they were speaking as employees or as trustees).

In this case, the Levy & Droney Report specifies that counsel interviewed approximately 38 unnamed employees in conducting the audit. Report, p. 11. Attorneys conducting the interviews advised each person interviewed that the employee's statements would be treated confidentially. Report, pp. 6-7, Exhibit G. The statements contained in the Report are classic hearsay that the plaintiff now seeks to introduce to buttress his own unrelated claims.

Accordingly, for all of the above reasons, the Levy & Droney Report is inadmissible hearsay.

**V.    The Report is inadmissible because, applying the Rule 403 balancing test, any probative value is outweighed by unfair prejudice, juror confusion, and is a waste of time.**

Even if the Court were to determine that the Levy & Droney Report was relevant to the plaintiff's claims and otherwise admissible, the Court still should rule that the Report is inadmissible after conducting the balancing test required by Rule 403. See Coleman v. Home Depot, Inc., 306 F.3d 1333, 1335 (3d Cir. 2002) (ruling that even an EEOC letter of determination, "which is presumptively probative when not challenged as untrustworthy under Rule 803(8)(C), can nonetheless be excluded due to the considerations identified in Rule 403."). "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. Each of the factors listed in Rule 403 apply to the Report and the Rule 403 balancing test tips decidedly in favor of excluding the Report from evidence.

The plaintiff seeks admission of the Report because it casts the MDC in a negative light. The Report mentions, but does not provide any facts on, anonymous allegations of race discrimination and other employee complaints at the MDC. Reports that do not contain supporting facts have minimal probative value. See id. at 1339 ("The EEOC report in this case does not contain any footnotes or references to exactly what evidence is being relied upon.").

In addition, the Report accomplishes two objectives that the plaintiff was unable to accomplish at the pretrial conference, namely: (1) admitting evidence of other employees'

unrelated employment histories at the MDC and (2) admitting evidence of the amount of the Sharon Harper verdict. See Report pp. 4, 6. Both of these were excluded from evidence by the Court's ruling on the MDC's motion in limine. The Report also contains as exhibits newspaper articles, lists of pending claims, and describes what are essentially opinions, rumors, and conjecture from current and former MDC employees. Given that the Report has such minimal probative value, particularly in light of the Court's previous rulings in this matter, the substantial unfair prejudice that would result from the Report renders it inadmissible.

The Report also likely will confuse the jury. Because the Levy & Droney Report addresses a wide range of employment practices, a wide range of MDC employees, including unionized workers whose employment is governed by several collective bargaining agreements, and purports to cover various MDC locations, the jury likely will be confused over what is at issue in the plaintiff's case. See Svege v. Mercedez-Benz Credit Corp., No. 3:01CV1771 (MRK), slip op. at 5 (D. Conn. Aug. 6, 2004) ("Balanced against the low probative value is the likelihood that the complaints will confuse the jury and invite them to speculate about the resolutions of those other actions and how those resolutions should affect their decision-making in this case."). The danger of confusion is compounded by the fact that the plaintiff did not identify any witnesses who would be able to explain the Levy & Droney Report.

Admission of the Levy & Droney Report also will cause undue delay and a waste of time. It should be noted that, as represented by the plaintiff in a letter from his counsel dated September 27, 2004, the relevant time frame will "span from March, 1999 through March,

2002." The Levy & Droney Report is dated March 15, 2002 and the letter reporting changes to the Report is dated April 2, 2002. Accordingly, the Levy & Droney Report comes at the end of, and the corrections come after, the time period identified by the plaintiff as the relevant time period for his claims. If the Report were admitted into evidence, the MDC would be forced to respond to the entire Report, not only to correct what the MDC feels are misstatements made in the Report, but also to offer evidence on what the MDC did in response to the Report. As observed by the Coleman court:

> [H]ad the EEOC report been admitted, a great deal of time would have had to have been consumed to counter the report's conclusion about the fate of other employees, male and female. Because the EEOC Letter of Determination concluded that Home Depot had systematically discriminated against female and minority employees, in order to rebut these expansive allegations, Home Depot would have had to present evidence showing that it did not discriminate when it placed former employees in cashier positions or fired them. This would certainly have involved a great deal of testimony – a trial within a trial in fact – about the employment histories of a large number of former employees.

Id. at 1346.

Similarly, in this case, introduction of the Levy & Droney Report would require "a trial within a trial" to allow the MDC to adequately defend itself. The MDC's response to the Report included taking numerous actions recommended in and other actions not recommended in the Report but determined to be prudent by the MDC to address some of the concerns raised in the Report. In addition, the Report references a large number of employees' specific employment histories that MDC would have to rebut with testimony this Court has previously excluded as irrelevant. The admission of this evidence would increase substantially the length of the trial and

would distract the jury from what should be the real focus in the case, which is the <u>plaintiff's</u> claims of race discrimination and retaliation. <u>Id.</u> at 1340-41 (the trial court explained that "[t]his jury would, in effect, be receiving an EEOC determination in the nature of an expert opinion on conclusions which this lay jury is as equipped to reach from the evidence and its own experience and instructions ... and will have the ability to draw its own conclusions from the evidence presented whether [the plaintiff] was or was not subjected to disparate treatment in her assignments and in her termination in this case.").

Nor may the Report be redacted to sufficiently minimize the risk of its prejudicial nature. As detailed above, the Report's conclusions and recommendations are founded upon, and interwoven with, the very type of inflammatory evidence Rule 403 seeks to protect against. Allowing the jury to consider only portions of a fifty page report detailing the MDC's compliance, or lack thereof, with its discrimination policies, would create unfair prejudice and unduly confuse the jury. <u>See id.</u> at 1339 ("I have reviewed the report line by line in order to determine whether it should be excluded or admitted in whole or in part. I conclude that it must be excluded in whole, that it cannot be redacted or admitted in its entirety without creating the very danger of unfair prejudice and confusion which Rule 403 requires the Court to avoid in making discretionary evidentiary rulings.").

Finally, Rule 403 requires that the Court determine whether admission of the Levy & Droney Report would be cumulative of evidence already expected to be admitted in the trial. <u>See</u> <u>Young v. James Green Management, Inc.</u>, 327 F.3d 616, 624 (7th Cir. 2003) (in ruling that EEOC

determination letter is inadmissible, court noted that "plaintiffs have pointed to no evidentiary material available to the EEOC that was not otherwise available to the jury during trial."). It is expected that the plaintiff would offer evidence of the specific MDC policies and procedures that are directly related to the plaintiff's claims. Accordingly, any additional or supplemental information about those policies and procedures contained in the Levy & Droney Report would be cumulative.

## VIII. Conclusion.

For all of the foregoing reasons, the MDC requests that the Court rule that the Levy & Droney Report is inadmissible in evidence in this case.

DEFENDANT,
THE METROPOLITAN DISTRICT
COMMISSION

By: /s/
James A. Wade (ct00086)
E-mail: jwade@rc.com
Stephen W. Aronson (ct02216)
E-mail: saronson@rc.com
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
Phone: (860) 275-8200
Fax: (860) 275-8299

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed via first class mail on this the 1st day of October, 2004, to the following counsel of record:

Robert W. Heagney, Esq.
Stuart E. Brown, Esq.
Hassett & George, P.C.
555 Franklin Avenue
Hartford, CT  06114

_____
Stephen W. Aronson