UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LEBERT THOMAS | : |
| | : |
| Plaintiff, | : |
| | : No. 3:02CV457(MRK) |
| v. | : |
| | : |
| METROPOLITAN DISTRICT | : |
| COMMISSION | : |
| | : |
| Defendant. | : |

## RULING AND ORDER

At a final pretrial conference on September 22, 2004, Defendant Metropolitan District Commission ("MDC") objected to the admissibility of an exhibit that the Court will call the Levy & Droney Report ("Report") that Plaintiff Lebert Thomas intended to offer at trial. The Report contains the written conclusions of Levy & Droney, P.C., a law firm that was hired by MDC to conduct an independent investigation of MDC's employment practices. On November 3, 2004, the Court held a hearing in advance of the jury trial to determine the admissibility of the Report and to hear argument from the parties on the subject.[1] The sole basis upon which Plaintiff asserted that the Report was admissible was Rule 801(d)(2)(C) of the *Federal Rules of Evidence*, which provides that a "statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement by a person authorized by the party to make a statement concerning the subject." See Pl.'s Mem. [doc. #57] at 1, 3.

---

[1] The Court also considered briefs filed by both parties. See Pl.'s Mem. [doc. #57]; Def.'s Mem. [doc. #59].

1

At the hearing and in an effort to lay a proper foundation for the admissibility of the Report, Plaintiff presented the testimony of one witness, John Rose, Jr., the principal author of the Report. The Court also received in evidence at the hearing a copy of the complete Report and a cover letter making certain corrections to the Report. At the conclusion of the hearing on November 3, 2004, the Court issued an oral ruling sustaining the Defendant's objection to the admissibility of the Report and this Ruling and Order is intended to summarize the Court's oral statement of its ruling on the admissibility of the Report.

The Court has concluded that the Report is not admissible for four reasons. First, in order to introduce the Report, it is clear that testimony would have been required to lay a foundation for its admissibility. Rule 801(d)(2) itself states that the "contents of the statement shall be considered *but are not alone sufficient* to establish the declarant's authority under subdivision (C) . . . " (emphasis added). Therefore, the Report would not have been admissible without the testimony of a witness who could lay a proper foundation for Levy & Droney's authority. The only witness offered by Plaintiff to lay that foundation was Mr. Rose. Yet, Mr. Rose was never disclosed on Plaintiff's witness list in its Joint Trial Memorandum [doc. #45], and this Court's instructions on the preparation of a Joint Trial Memorandum make it clear that "[w]itnesses not included in this list shall not be permitted to testify at trial, except for good cause shown." Plaintiff made no showing of good cause for not listing Mr. Rose on his Joint Trial Memorandum, and therefore, that failure would be grounds enough to prohibit Mr. Rose from testifying in Plaintiff's case in chief. And without Mr. Rose, Plaintiff cannot lay a proper foundation for the admissibility of the Report. That said, if this were the only reason for excluding the Report, the Court likely would not do so. However, as set forth below, there are

indeed other reasons for excluding the Report.

Second, the testimony of Mr. Rose failed to establish that the Report satisfies the requirements of Rule 801(d)(2)(C). The testimony of Mr. Rose at the evidentiary hearing did not establish that his firm was authorized to make statements on MDC's behalf. In fact, Mr. Rose's testimony indicated quite the opposite – that both the MDC and Levy & Droney considered the firm to be an entirely independent and impartial investigator, that the MDC provided no input into the contents of the Report, and that the MDC had not adopted or acquiesced in the statements contained in the Report. Mr. Rose's testimony also established that Levy & Droney was not MDC's agent for purposes of the statements made by Levy & Droney in the Report. That is, Plaintiff failed to establish that Levy & Droney was authorized to speak on behalf of the MDC regarding its employment practices. Under these circumstances, Plaintiff has failed to shoulder his burden of establishing that the prerequisites to Rule 801 (d)(2)(C) have been met.[2] *See Kirk v. Raymark Indus., Inc.*, 61 F.3d 147, 164 (3rd Cir. 1995) (holding that the testimony of an expert witness who was not an agent of the defendant was not an admission of the defendant); *Benson v. American Ultramar Ltd.*, No. 92CIV4420 (KMW)(NRB), 1996 WL 422262, *10 (S.D.N.Y. July 29,1996) (memorandum prepared by a law firm hired by defendant to assess its pension arrangements was inadmissible under Rule 801(d)(2)(c)).

The Court does not doubt that there are circumstances where a company retains an outside entity such as a law firm to conduct an investigation for a company and where the

---

[2] At the hearing, Plaintiff directed the Court's attention to *Collins v. Wayne*, 621 F.2d 771, 782 (5th Cir. 1980). *Collins* does not assist Plaintiff, because the court in *Collins* made a finding that the expert was an agent of the defendant. By contrast, this Court finds no evidence to support that Levy & Droney was acting as an agent of MDC.

evidence shows that the law firm is authorized to speak on behalf of the company regarding the subject matter of its undertaking. In those circumstances, the requirements of Rule 801(2)(d)(C) would be satisfied. In this case, however, Plaintiff's evidence did not come close to meeting the requirements of the rule, and since that is the sole ground upon which Plaintiff urged the Report's admissibility, the Court is left with no choice but to sustain Defendant's objection.

Third, and in any event, the Court has serious doubts about the relevance of the Report to Plaintiff's case-in-chief. *See* Fed. R. Evid. 401. Plaintiff asserted that the Report was relevant only to his hostile work environment claim and only for purpose of showing that the hostile work conditions under which Mr. Thomas worked were attributable to MDC itself because it did not have adequate procedures in place to report and investigate such claims. According to Plaintiff, certain of the Report's findings supported Plaintiff's assertion that MDC lacked appropriate complaint processes.[3] However, as Plaintiff's counsel admitted at the hearing, since Mr. Thomas alleges that the hostile conditions were created by his superiors, not by co-workers, he does not have to show a lack of complaint procedures to attribute the hostile work conditions to the MDC. *See Burlington Indus., Inc. v. Ellerth* 524 U.S. 742, 764-65 (1998) (employer is vicariously liable for the hostile work environment created by a supervisor). Therefore, the Report is not

---

[3] *See Report*, Ex. A [doc. #29], at 12, 13, 19, 28, 29, 38. However, the Report also includes findings that are damaging to Plaintiff's claim:

> We have uncovered no evidence of overt institutionalized racism at the MDC. There appears to be no evidence of systemic discrimination and no pattern or practice discrimination in the District; nor do MDC policies appear designed to have a discriminatory effect. There is no evidence that promotional policies unfairly disadvantage minorities or that job revaluations are inherently discriminatory.

*Report*, Pl. Trial Ex. 26, at 11.

relevant to the issues in Plaintiff's case-in-chief.

It is possible that the MDC may assert the affirmative defense recognized in *Ellerth* and its companion case *Faragher v. Boca Raton*, 524 U.S. 775 (1998), in which case the lack of appropriate procedures may well become relevant. *See* 524 U.S. at 765 (suggesting that an employer may defend itself with "proof that [it] had promulgated an antiharassment policy with complaint procedure"). However, should that occur, Plaintiff would be able in his rebuttal case to prove the lack of appropriate procedures through testimony – that is, the testimony of Mr. Thomas, other employees of MDC, and Mr. Rose himself (rebuttal witnesses need not be listed in the joint trial memorandum). There would be no need therefore to try to establish the lack of procedures through a hearsay statement – namely, the Report – that is not subject to cross-examination. Thus, to the extent that the factual findings in the Report become relevant as a result of assertions made by MDC's witnesses, Mr. Thomas is free to offer Mr. Rose's testimony regarding his findings to rebut any such assertions by MDC.

Fourth and finally, even if the Report were otherwise admissible, the Court would exercise its authority under Rule 403 to exclude the Report because whatever slight probative value the Report has for Plaintiff's case-in-chief is far outweighed by the danger of prejudice, confusion, waste of time and undue delay. Having reviewed the report, it is clear that it would be misleading to admit only some of the bold-faced statements set forth in the Report (as Plaintiff requests) without also admitting the entire Report and all of its findings as well as the language surrounding the bold-faced statements, which explains and often counters the bold-faced statements. Inevitably, the trial of the discrete claims in this case would spin off into mini-trials on all of the findings and opinions set forth in the Report. Particularly since Mr. Thomas was

5

never even interviewed for the Report and his claims therefore do not form a basis for any of the statements in the Report, the Court concludes that the probative value, if any, of the Report, is far outweighed by considerations of prejudice, confusion and time. *See, e.g.*, *Sanders v. New York City Human Resources Admin.*, 361 F.3d 749, 758 (2d Cir. 2004) (statement of a co-worker that actions of plaintiff's supervisor were retaliatory was properly excluded under Rule 403 because the potential for unfair prejudice or confusion substantially outweighed its probative value).

Accordingly, the Court sustains Defendant's objections to the admissibility of the Report in this case.

IT IS SO ORDERED.

/s/      Mark R. Kravitz
United States District Judge

Dated at New Haven, Connecticut: November 5, 2004.