UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

*FILED*

| | | |
|---|---|---|
| LEBERT THOMAS, | : | CIVIL ACTION NO.2004 NOV 10 P 1: 12 |
| Plaintiff, | : | 3:02-CV-00457 (MRK) |
| | : | |
| v. | : | U.S. DISTRICT COURT |
| | : | NEW HAVEN, CT |
| | : | |
| THE METROPOLITAN DISTRICT | : | |
| COMMISSION, | : | |
| Defendant. | : | |

NOVEMBER 10, 2004

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

**I.     INTRODUCTION**

Pursuant to Rule 50 of the Federal Rules of Civil Procedure, the defendant, the

Metropolitan District Commission ("MDC"), moves for judgment as a matter of law in favor of

defendant on all counts of plaintiff's complaint. The MDC respectfully submits this

Memorandum of Law in support thereof. Based upon both the evidence presented by the

plaintiff and the applicable law, a reasonable trier of fact must find in favor of the MDC on all

counts of the plaintiff's Complaint.

**II.     ARGUMENT**

Federal Rule of Civil Procedure 50(a) provides:

> **Judgment as a Matter of Law.** If during a trial by jury a party
> has been fully heard on an issue and there is no legally sufficient
> evidentiary basis for a reasonable jury to find for that party on that
> issue, the court may determine the issue against that party and may
> grant a motion for judgment as a matter of law against that party
> with respect to a claim or defense that cannot under the controlling
> law be maintained or defeated without a favorable finding on that
> issue.

* * * *

ORAL ARGUMENT REQUESTED
TESTIMONY NOT REQUIRED

1216000.2

"The same standard that applies to a pretrial motion for summary judgment pursuant to Fed. R. Civ. P. 56 also applies to motions for judgment as a matter of law during or after trial pursuant to Rule 50.'" This Is Me, Inc. v. Taylor, 157 F.3d 139, 142 (2d Cir. 1998) (quoting Piesco v. Koch, 12 F.3d 332, 341 (2d Cir. 1993). Federal Rule of Civil Procedure 56 "*mandates* the entry of summary judgment . . . against the party who fails to make a showing sufficient to show the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (emphasis added).

A district court may grant a motion for judgment as a matter of law if "the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached." Merrill Lynch Interfunding, Inc. v. Argenti, 155 F.3d 113, 120 (2d Cir. 1998); Cruz v. Local Union No. 3, Int'l Bhd. Of Elec. Workers, 34 F.3d 1148, 1154-55 (2d Cir. 1994) (same). More specifically, judgment as a matter of law should be granted when:

> (1)  there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or

> (2)  there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded persons could not have arrived at a verdict against it.

Galdieri-Ambrosini v. National Realty & Dev. Corp., 136 F.3d 276, 289 (2d Cir. 1998) (internal citations omitted). In employment discrimination cases, a motion for judgment as a matter of law is appropriate where the plaintiff-employee fails to produce "sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the [defendant-employer] were false, and that more likely than not [discrimination] was the real reason for the

[employment action]." <u>Van Zant v. KLM Royal Dutch Airlines</u>, 80 F.3d 708, 714 (2d Cir. 1996); <u>see also</u> <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 148 (2000); <u>Galdieri-Ambrosini</u>, 136 F.3d at 289 (granting judgment as a matter of law in Title VII retaliation and gender discrimination case).

## A.     Plaintiff Did Not Suffer An Adverse Employment Action

Plaintiff alleges that the MDC discriminated against him and created a hostile working environment based on his race and in retaliation for his testimony in <u>Harper v. MDC</u>, in violation of Title 42, U.S.C. Section 1983, Title 42, U.S.C. Section 1981 and Title VII of the Civil Rights Act of 1967, Title 42, U.S.C. Section 2000(e) <u>et seq</u>.  The MDC is entitled to judgment as a matter of law on all Counts because there is no evidence to support a finding that the plaintiff suffered an adverse employment action.

To assert a prima facie case of race discrimination under Title VII, § 1983 and §1981, the plaintiff must allege that "(1) he belonged to a protected class; (2) he was qualified for the employment position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." <u>Terry v. Ashcroft</u>, 336 F.3d 128, 138, 141 (2d Cir. 2003); <u>see also</u> <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).[1]  Similarly, to satisfy the elements of a retaliation claim, an aggrieved party must show (1) participation in a protected activity that is known to the employer; (2) an adverse employment action; and (3) there was a causal relationship between the employee's protected activity and the employer's adverse employment action. <u>See</u> <u>Palma v. Pharmedica Communications, Inc.</u>, No. 3:00CV1128, 2002 U.S. Dist. LEXIS 26159, at *11 (D.

---

[1] The <u>McDonnell-Douglas</u> framework is applicable not only to Title VII claims, but also to race discrimination claims under § 1981 and § 1983.  <u>See</u>, <u>e.g.</u>, <u>St. Mary's Honor Ctr.</u>, 509 U.S. 502, 506 (analyzing § 1983 claim under <u>McDonnell-Douglas</u> framework); <u>Patterson v. McLean Credit Union</u>, 491 U.S. 164, 185 (holding that the <u>McDonnell-Douglas</u> scheme applies to claims of race discrimination under § 1981).

3

Conn. Mar. 27, 2002); see also Van Zant, 80 F.3d at 713. To establish a prima facie case of

hostile work environment harassment, an aggrieved party must show that (1) the workplace was

permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the

conditions of his work environment; (2) the harassment resulted in a tangible employment

action; and (3) a specific basis exists for imputing the harassing conduct to the employer.[2] See

Shwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997). Thus, to award a verdict in favor

of the plaintiff on any of his claims, the jury must find that the plaintiff suffered from an adverse

employment action.

The plaintiff has not met this burden. The Second Circuit has interpreted an adverse

employment action as a "materially adverse change" in the terms and conditions of an

employee's employment. Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir.

2000); Richardson v. New York State Dep't of Correctional Serv., 180 F.3d 426, 446 (2d Cir.

1999). Specific examples of materially adverse employment actions identified by the Second

Circuit include "termination of employment, a demotion evidenced by a decrease in wage or

salary, a less distinguished title, a material loss of benefits, significantly diminished material

responsibilities, or other indices that might be unique to a particular situation."[3] Galabya, 202

F.3d at 640 (quoting Crady v. Liberty Nat'l Bank & Trust Co., 993 F.2d 132,136 (7th Cir.

1993)). In addition, "an adverse employment action is not every action that an employee dislikes

---

[2] An employer may be held liable for supervisor harassment that "culminates in a tangible employment action." Burlington Indus. v. Ellerth, 524 U.S. 742, 765 (1998); accord Faragher v. City of Boca Raton, 524 U.S. 775, 808 (1998). When an employee suffered no tangible employment action, the employer will prevail by asserting an affirmative defense showing it exercised reasonable care to prevent and correct promptly any harassing behavior and that the employee unreasonably failed to take advantage of any available preventive or corrective opportunities. See Ellerth, 524 U.S. at 765; accord Faragher, 524 U.S. at 807. Moreover, an employer need not prove it successfully prevented harassing behavior to demonstrate that it exercised reasonable care in preventing and correcting harassing conduct. Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 295 (2d Cir. 1999).
[3] In addition, the United States Supreme Court has held that "[a] tangible employment action constitutes a significant change in employment status, such as firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Ellerth, 524 U.S. at 761.

4

or disagrees with. Rather, a reasonable person must view the decision as adverse." Leson v. ARI of Conn., 51 F. Supp. 2d 135, 142 (D. Conn. 1999) (citing Doe v. Dekalb County Sch. Dist., 145 F.3d 1441, 1449 (11th Cir. 1998). Not every unpleasant matter short of discharge or demotion constitutes an adverse employment action. Wanamaker v. Columbian Rope Co., 108 F.3d 462, 466 (2d Cir. 1997) (citing Welsh v. Derwinski, 14 F.3d 85, 86 (1st Cir. 1994)).

      1.     Plaintiff's Allegations Do Not Constitute An Adverse Employment Action

Plaintiff claimed at trial that he suffered an adverse employment action because his supervisor insisted on participating in certain interviews plaintiff had previously conducted individually. In addition, Plaintiff alleged that he suffered an adverse employment action because he was excluded from certain meetings pertaining to projects generally under his supervision, and his decision regarding the seat placement of a subordinate employee was overruled by his supervisor. Changes in an employee's working conditions must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." Terry, 336 F.3d at 138, 141; Galabya, 202 F.3d at 640 (quoting Crady, 993 F.2d at 136). For instance, the Second Circuit commented in Sanders v. N.Y. City Human Res. Admin., 361 F.3d 749, 756 (2d Cir. 2004), that a female employee's complaints of being excluded from male-only meetings would not have amounted to an adverse employment action because such meetings were unrelated to her office duties. See 361 F.3d at 756. Moreover, an employee's subjective, personal disappointments do not meet the objective indicia of an adverse employment action. Galabya, 202 F.3d at 640. Rather, an employee must point to discrete employment actions creating a materially significant disadvantage, for example, "a change in responsibilities so significant as to constitute a setback in the employee's career," for such actions to rise to the level of adverse employment actions. Pipkin v. Bridgeport Bd. of Educ., 323 F. Supp. 2d 326, 333 (D. Conn.

5

2004) (quoting Galabya, 202 F.3d at 636). Plaintiff's claims that he was excluded from meetings, and a decision he made was overruled, constitute subjective disappointments and do not establish adverse employment actions.

Nor do plaintiff's allegations regarding treatment by his supervisor, Neil Geldof, rise to the level of an adverse employment action. Plaintiff testified that Mr. Geldof yelled at him in a meeting and thereafter confronted him in the presence of the Chairman of the MDC and stated "I hear you are saying bad things about me," and "I was your biggest supporter around here." Even if the jury credits Plaintiff's allegations in their entirety, the conduct attributed to Mr. Geldof is insufficient to form actionable discrimination.

In Munday v. Waste Management of North America, Inc., the employee claimed that her manager's conduct in yelling at her during a meeting, directing other employees to ignore her and to spy on her, and generally refusing to communicate with her concerning her employment-related complaints constituted an adverse employment action. See 126 F.3d 239, 243 (4th Cir. 1995). The court found the conduct insufficient to rise to the level of an adverse employment action for Title VII purposes. See id. See also Webb v. Cardiothoracic Surgery Assocs. of N. Tex., 139 F.3d 532 (5th Cir. 1998) (rejecting employee's assertion that boss's rude, uncivil treatment constituted an adverse employment action).

Similarly, in Scusa v. Nestle U.S.A. Co., Inc., the Eighth Circuit Court of Appeals found that the employee failed to show that she suffered an adverse employment action by alleging that her co-workers and immediate supervisor stopped talking to her, treated her rudely, followed her, glared at her, slammed doors in her face and scratched the finish on her car with their keys, because the employee suffered no diminution in her title, salary, or benefits. See 181 F.3d 958, 968-69 (8th Cir. 1999). See also Ross v. Glickman, 125 F.3d 859 (9th Cir. 1997) (shunning by

6

office staff not actionable hostile work environment under Title VII); Manning v. Metropolitan Life Ins. Co., 127 F.3d 686 (8th Cir. 1997) (employment actions that are sufficiently adverse to sustain a retaliation claim include tangible change in duties or working conditions that constituted a material employment disadvantage, or an ultimate employment decision, but not mere hostility, disrespect, or ostracism); Robinson v. City of Pittsburgh, 120 F.3d 1286, 1301 (3d Cir. 1997) (allegations that an employee was subjected to "unsubstantiated oral reprimands" and "unnecessary derogatory comments" following her complaint did not rise to the level of the "adverse employment action" required for a retaliation claim); Miller v. Aluminum Co. of Am., 679 F. Supp. 495, 505 (W.D. Pa. 1988) (employee must show more than occasional unkind words, snubs and perceived slights by supervisor and its agents to prove adverse employment actions).  Plaintiff's allegations regarding alleged treatment by Mr. Geldof are insufficient to prove an adverse employment action as a matter of law.

2.  Plaintiff's Failure to Pursue Reclassification Bars A Finding of Adverse Employment Action

To the extent Plaintiff attempts to argue that he suffered an adverse employment action because the MDC did not consider his reclassification request, the MDC also is entitled to judgment as a matter of law.  The plaintiff cannot claim an adverse employment action where his own failure to act ensured the challenged outcome.  Alphonse v. State of CT Dept. of Admin. Svcs., No. 3:02cv1195, 2004 U.S. Dist. LEXIS 7239 (D. Conn. Apr. 21, 2004) (rejecting discrimination claim where plaintiff did not apply for open position, and therefore could not establish an adverse employment action); see also Brown v. Coach Stores, 163 F.3d 706 (2d Cir. 1998) (where employee did not establish that she applied for open positions, she could not establish an adverse action).

As established at trial, MDC policy places the onus on the employee to initiate the reclassification process by filing a request for reclassification. Plaintiff testified that his supervisor, Neil Geldof, who was not the person authorized with granting or denying a request for reclassification, told plaintiff when he submitted his request that, "he [Geldof] would throw it in the garbage can" and then, in fact, threw it in the garbage can. Plaintiff concedes that he knew that the decision to grant or deny the reclassification request did not rest with Mr. Geldof. Nonetheless, the plaintiff attempts to claim that he somehow was prevented from pursuing reclassification.

Plaintiff's claim is refuted by evidence presented at trial. Plaintiff testified that both Mr. Newton and Mr. Geldof were his bosses in the engineering department. Mr. Newton testified that the plaintiff could have submitted the reclassification request to him or to Mr. Geldof. However, the plaintiff did not attempt to pursue his reclassification with Mr. Newton, nor did he explain his failure to do so. In addition, the plaintiff testified that he did not attempt to file his reclassification request directly with the Human Resources Department. At trial, the plaintiff did not explain this failure, particularly in light of his testimony that Mr. Geldof did not possess final authority to grant or deny a request.

No reasonable, fair-minded jury could award damages to the plaintiff for the MDC's alleged failure to consider his reclassification request in the face of the plaintiff's own testimony that he did not adequately pursue reclassification. However, even if the plaintiff had established that the MDC should have considered a reclassification request, the plaintiff has not established an adverse employment action. The plaintiff failed to establish that he would have been entitled to reclassification had a request been considered. In addition, the Plaintiff failed to present

8

competent evidence to calculate his new salary if he had been reclassified.[4]  The Second Circuit

requires a showing of a <u>materially</u> adverse employment action, for instance "termination of

employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a

material loss of benefits, significantly diminished material responsibilities, or other indices that

might be unique to a particular situation."[5]  <u>Galabya</u>, 202 F.3d at 640 (quoting <u>Crady v. Liberty</u>

<u>Nat'l Bank & Trust Co.</u>, 993 F.2d 132,136 (7th Cir. 1993)).  Accordingly, the MDC is entitled to

judgment as a matter of law.

**B.  <u>Plaintiff Has Not Offered Evidence That the MDC Treated Him Differently</u>
<u>Because of his Race.</u>**

1.      <u>Plaintiff Has Failed To Establish A Prima Facie Case of Race</u>
<u>Discrimination Through Indirect Proof.</u>[6]

Even if plaintiff's allegations constituted an adverse employment action, which they do

not, the plaintiff's claim nonetheless fails.  To prevail on his race discrimination case, Plaintiff

must have offered evidence that the MDC discriminated against him based on his race.  The

plaintiff, however, has proffered no evidence to demonstrate that any action was taken by the

MDC because he is African American.

The plaintiff has not submitted sufficient evidence to establish the fourth prong of his

prima facie case, because he has no proof any adverse action taken against him occurred under

circumstances supporting an inference of race discrimination.  "Plaintiff's membership in a

protected class does not, in and of itself, establish an inference of discrimination following an

---

[4] To recover damages, a claimant must present evidence that provides the finder of fact with a reasonable basis upon which to calculate the amount of damages....The [finder of fact] is not allowed to base its award on speculation or guesswork."  <u>Sir Speedy, Inc. v. L & P Graphics, Inc.</u>, 957 F.2d 1033, 1038 (2d Cir. 1992).
[5] In addition, The United States Supreme Court has held that "[a] tangible employment action constitutes a significant change in employment status, such as firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  <u>Ellerth</u>, 524 U.S. at 761.
[6] Plaintiff adduced no direct evidence of race discrimination at trial.  Thus, to prove his allegations, plaintiff must resort to indirect proof of discrimination.

adverse employment decision unless the latter is predicated on consideration of the former."

Croom v. West. Conn. State Univ., No. 3:00cv1805, 2002 U.S. Dist. LEXIS 27361, at *11 (D.

Conn. Dec. 12, 2002).  See also Atterberry v. Ikon Office Solutions, Inc., Civ. No. 3:02cv1490,

2003 U.S. Dist. LEXIS 22316 at *26 (D. Conn. Dec. 9, 2003) (finding employer entitled to

judgment as a matter of law because plaintiff could not establish that termination occurred under

circumstances giving rise to an inference of discrimination).  Plaintiff has presented no evidence

establishing any connection between the MDC's employment decisions and Plaintiff's race.  As

the plaintiff has failed to adduce evidence that would support a rational finding that any action

taken with respect to him occurred under circumstances supporting an inference of race

discrimination, he has thus failed to establish the fourth element of a prima facie case of race

discrimination under Title VII.   The MDC is entitled to judgment as a matter of law.

     2.    Plaintiff Has Failed To Establish that the MDC's Legitimate, Non-
          Discriminatory Reasons were Pretext for Race Discrimination.

Even assuming, arguendo, that the plaintiff could establish his prima facie case, the

plaintiff has presented absolutely no evidence that the MDC's legitimate, non-discriminatory

reason its actions constitute a pretext for race discrimination.  The MDC has offered a

nondiscriminatory reason for all of its decisions with respect to the plaintiff.  After the employer

proffers a nondiscriminatory reason for its challenged conduct, any presumption raised by the

prima facie case, if it is in fact established, is rebutted, and the factual inquiry proceeds to a new

level of specificity.  See Fisher v. Vassar College, 114 F.3d 1332, 1336 (2d Cir. 1997); see also

St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993); Texas Dep't of Community Affairs v.

Burdine, 450 U.S. 248, 255 (1981).

The plaintiff bears the ultimate burden of persuading the trier of fact that the defendant

intentionally discriminated against him on the basis of his race.  See Fisher, 114 F.3d at 1336;

see also <u>Hicks</u>, 509 U.S. at 507.  "A Title VII plaintiff may not prevail by establishing only [that

the defendant's proffered reason is false], but must prove, in addition, that a motivating reason

was discrimination." <u>Bickerstaff v. Vassar College</u>, 196 F.3d 435 (2d Cir. 1999) (<u>quoting</u> <u>Fisher</u>

<u>v. N.Y. State Office of Mental Retardation</u>, 115 F.3d 116, 120 (2d Cir. 1997)).  The plaintiff

must "produce not simply 'some' evidence, but 'sufficient evidence to support a rational finding

that the legitimate, non-discriminatory reasons proffered by the [Defendant] were false and that

more likely than not [discrimination] was the real reason for the [employment action].'" <u>Van</u>

<u>Zant,</u> 80 F.3d at 714.  Here, the plaintiff has not adduced sufficient evidence to support either of

these two required findings.  Therefore, the MDC is entitled to judgment as a matter of law.

### C.  <u>Plaintiff Has Not Offered Any Evidence That the MDC Treated Him Differently In Retaliation For His Testimony in Harper v. MDC</u>

#### 1.  <u>Plaintiff Provides No Evidence that the Decision-Makers Considered His Testimony in Taking Actions with respect to Plaintiff</u>

To state a prima facie case or retaliation, a plaintiff must show (1) participation in a

protected activity that is known to the employer; (2) an adverse employment action; and (3) there

was a causal relationship between the employee's protected activity and the employer's adverse

employment action. <u>See</u> <u>Palma</u>, 2002 U.S. Dist. LEXIS 26159, at *11; <u>Van Zant</u>, 80 F.3d at 713.

Because the plaintiff did not establish any evidence supporting the third prong of his prima facie

case, the MDC is entitled to judgment as a matter of law on plaintiff's retaliation claim.

Plaintiff has offered <u>no</u> evidence that Robert Moore or Neil Geldof considered the

plaintiff's testimony in the Sharon Harper matter in making any decisions with respect to the

plaintiff.  In fact, the plaintiff offered no testimony that either individual even <u>knew</u> the

substance of his testimony, other than his own assumptions that they did.  At trial, Plaintiff

conceded that he never discussed the substance of his testimony with any manager at the MDC.

11

The sole connection upon which the plaintiff relies between the his testimony and all actions that occurred after that testimony is a cell phone call he received from Mr. Geldof on the day of the verdict allegedly telling him not to incite trouble. The plaintiff has simply failed to adduce any evidence that his testimony was in at all connected to employment actions taken by the MDC. The plaintiff has failed to offer any competent evidence to establish a causal connection between his testimony and the challenged actions taken by Mr. Moore and Mr. Geldof.

Conclusory assertions do not establish the requisite causal connection. <u>Van Zant</u>, 80 F.3d at 714 (affirming grant of summary judgment in favor of employer in Title VII retaliation claim because plaintiff had offered "nothing more than conclusory allegations to suggest a causal relationship between her complaints . . . and either her negative 1992 evaluation or her termination"); <u>Ali v. Mount Sinai Hosp.</u>, 1996 U.S. Dist. LEXIS 8079, at *29 (S.D.N.Y. June 12, 1996) (granting summary judgment for employer where plaintiff offered only speculation in support of her claims that she was retaliated against for filing grievances). Just as this Court cannot second-guess the wisdom of the MDC's decisions in analyzing plaintiff's discriminatory discharge claim, "[i]n the absence of proof sufficient to create a jury issue regarding retaliation, courts should not use cases involving unsupported reprisal claims to police the wisdom, fairness, or even the rationality of an employer's business judgment." <u>Mesnick v. General Elec. Co.</u>, 950 F.2d 816, 829 (1st Cir. 1991), <u>cert. denied</u>, 504 U.S. 985 (1992). Accordingly, the plaintiff cannot establish the fourth prong of his prima facie case of retaliation, and the MDC is entitled to judgment as a matter of law.

**D.    <u>Plaintiff Has Offered No Evidence of a Racially Hostile Work Environment</u>**

As with his race discrimination and retaliation claims, Plaintiff has failed to carry his initial burden of presenting sufficient evidence of a racially hostile work environment. A racially

12

hostile work environment exists only "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." Brennan v. Metropolitan Opera Assoc., 192 F.3d 310, 318 (2d Cir. 1999) (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)).  Conduct that is "merely offensive" or that a reasonable person would not find creates a hostile or abusive work environment is not actionable.  A plaintiff is required to produce evidence "not only that the victim subjectively perceived the environment to be hostile or abusive, but also that the environment was objectively hostile and abusive." Guerrero v. Conn. Dep't. of Children and Families, 315 F. Supp. 2d 202, 212 (D. Conn. 2004).

"As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Terry, 336 F.3d at 148 (internal citations omitted).  Therefore, "[i]solated, minor acts or occasional episodes do not warrant relief." Brennan, 192 F.3d at 318.  See Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997) (to establish a hostile work environment, there must be "more than a few isolated incidents of racial enmity, meaning that instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments") (internal citations omitted).

Moreover, a plaintiff raising a "Title VII hostile environment claim . . . must produce evidence that [he] was discriminated against because of [his] race . . . ." Guerrero, 315 F. Supp. at 212 (citing Richardson v. New York State Dep't of Correctional Serv., 180 F.3d 426, 440 (2d Cir. 1999) (emphasis added) (granting summary judgment for employer in hostile work environment claim, where plaintiff alleged only various incidents leading to discipline, and failed to provide any evidence that the harassment was because of his race); Parmalee v. Conn. Dep't of Revenue Services, 160 F. Supp. 2d 294, 301 (D. Conn. 2001) (dismissing hostile work

13

environment claim where plaintiff provided evidence that work environment was unpleasant, but did not provide any evidence that the environment was pervaded by discrimination directed toward persons in protected classes). See also Janneh v. Endvest, 64 Fed. Appx. 814 (2d Cir. 2003) (dismissing hostile work environment claim where although supervisor was "impolite, sarcastic, antagonistic, and totally rude," there was no evidence that he made racially-charged comments to plaintiff).

In support of his hostile work environment claim, Plaintiff claims that he was yelled at once by Mr. Geldof, he was confronted by Mr. Geldof in the presence of Mr. Gallicchio, his supervisor was directed to sit in on his interviews, a seating decision regarding an employee under his supervision was overruled, and he was not included in certain meetings regarding projects generally under his supervision. These incidents clearly are not sufficiently "severe" or "pervasive" to establish a hostile work environment claim. See, e.g., Shabat v. Billotti, No. 96-7638, 1997 U.S. App. LEXIS 5133, at *3 (2d Cir. Mar. 19, 1997) (nine incidents perceived by plaintiff to evidence discriminatory animus over a three and one-half year period insufficient to establish claim for hostile environment). However, even if these incidents could be considered pervasive, Plaintiff has produced no evidence that these incidents were in any way related to his race. He has alleged no derogatory racial comments by his supervisors—much less a continuous pattern of such comments. Accordingly, the MDC is entitled to judgment as a matter of law.

**E.    Plaintiff Has Not Sufficiently Proved Damages**

The plaintiff has not sufficiently proved that he suffered damages as a result of the discriminatory and retaliatory treatment he alleges. Therefore, at most, the plaintiff is entitled to nominal damages, which the defendant requests that the Court determine as a matter of law.

At trial, plaintiff testified generally that he suffered embarrassment, humiliation, fear, shame, depression, sleeplessness and stress as a result of the alleged discriminatory conduct. Plaintiff further alleges, without providing supporting evidence, that he is being treated for hypertension. To justify recovery for emotional distress in the Second Circuit, "plaintiffs must present sufficient evidence that they experienced 'concrete emotional problems' and mere subjective statement by a plaintiff concerning feelings of anguish and humiliation, without any physical effects of such distress, or corroborating evidence or other supporting evidence, are insufficient."[7] DeJesus v. Village of Pelham Manor, 282 F. Supp. 2d 162 (S.D.N.Y. 2003) (citing Annis v. County of Westchester, 136 F.3d 239, 249 (2d Cir. 1998)). "The damage award must be supported by competent evidence concerning the injury." Patrolmen's Benevolent Assoc. of the City of New York v. the City of New York, 310 F.3d 43, 55 (2d Cir. 2002) (citing Carey v. Piphus, 435 U.S. 247, 264, n. 20 (1978)). "A plaintiff's subjective testimony, standing alone, is generally insufficient to sustain an award of emotional distress damages. Id.

In Annis v. County of Westchester, supra, the Second Circuit held that the plaintiff, a police lieutenant, had failed to support her claim for emotional distress damages because

> the only evidence of the [plaintiff's] emotional distress – her own testimony—is insufficient to warrant an award of compensatory damages for that injury She has not alleged any physical manifestations of her emotional distress, and despite the discrimination she remained a lieutenant with the County police. She testified that she needs and has counseling, but introduced no affidavit or other evidence to corroborate her testimony. In short, her testimony fails to establish that she suffers from any concrete emotional problems.

136 F.3d at 249 (internal citations omitted). Similarly, in this case, the plaintiff attempts to rely on his own vague testimony to sustain his proof of damages. Despite the alleged

---

[7] The standard applies similarly to cases brought under various civil rights laws. Reiter v. Metropolitan Transportation Authority of New York, 2003 U.S. Dist. LEXIS 17391, *21 (S.D.N.Y. 2003) ("While Patrolmen's Benevolent Assoc., like Annis, was a case brought under §1983, there is no reason to apply different standards to the award of compensatory damages for emotional distress under Title VII.")

15

discriminatory and retaliatory treatment, the plaintiff chose to remain employed with the

MDC, notwithstanding at least one offer of employment elsewhere. Plaintiff has not

offered evidence that he sought medical treatment as a result of his injuries.[8] To the

extent the plaintiff attempts to rely on treatment for hypertension, the plaintiff offered no

proof in that regard other than his own testimony, nor did he offer proof regarding the

cause of the alleged hypertension. In fact, the plaintiff admitted that he also was involved

in an automobile accident during that same time period. At trial, the plaintiff generally

relied on a litany of one-word answers to describe his emotional distress damages, with

little or no elaboration. In the absence of competent, corroborating evidence to support

his testimony, the plaintiff's claim for emotional distress damages must fail.

Further, the plaintiff failed to mitigate his damages, as required by law. The plaintiff

testified at trial that he was offered and refused a job opportunity outside of the MDC for

approximately $95,000. "A victim of employment discrimination has the same duty to mitigate

his damages as any victim of a tort or breach of contract." Ford Motor Co. v. EEOC, 458 U.S.

219, 231, n.15 (1982). Insofar as an avenue was open to plaintiff to engage in such mitigation,

he had a legal obligation to do so. See id. The plaintiff failed to mitigate his damages

### F.    **Plaintiff Can Not Prevail on his Section 1983 Claim**

   1.    Plaintiff Has Not Proven the Existence of a Discriminatory Municipal Policy

The plaintiff's §1983 claim also fails because he did not present sufficient evidence at

trial of the existence of a discriminatory policy or practice by which he was harmed. A party

may seek relief under § 1983 when a federally protected right, either constitutional or statutory,

---

[8] Although evidence of medical treatment is not required to sustain a claim for damages, it is helpful. See Patrolmen's Benevolent Assoc. of the City of New York v. the City of New York, 310 F.3d 43, 55 (2d Cir. 2002); Carrero v. New York City Housing Auth., 890 F.2d 569, 581 (2d Cir. 1989).

has been violated by a state or local official or other person who acted under color of state law.[9]

Municipal entities, however, are subject to § 1983 liability only when the violation of federal

rights stems from the enforcement of a municipal policy or custom. Monell v. Department of

Social Servs, 436 U.S. 658 (1978).

> A municipality may only be held liable under 42 U.S.C. § 1983 if a plaintiff
> proves the existence of: "'(1) an official policy or custom that (2) causes the
> plaintiff to be subjected to (3) a denial of a constitutional right.'" Zahra v. Town
> of Southold, 48 F.3d 674, 685 (2d Cir. 1995) (quoting Batista v. Rodriguez, 702
> F.2d 393, 397 (2d Cir. 1983). ... A municipality is liable only where "deliberate
> action attributable to the municipality itself is the 'moving force' behind the
> plaintiff's deprivation of federal rights." Board of the County Comm'rs v. Brown,
> 520 U.S. 397, 400, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997).   Plaintiff may
> prevail by showing that a final policymaker engaged in a policy or practice of
> racial discrimination in promotions, that a final policymaker knew of and ratified
> the discrimination by lower level municipal employees or that the practice of
> racial discrimination in promotions was so widespread as to form a custom and
> practice of the City, despite the lack of an official policy of discrimination. See
> Monell, 436 U.S. at 690-91.

Looby v. City of Hartford, 152 F. Supp. 2d 181, 187 (D. Conn. 2001).  The plaintiff has failed to

meet this burden of proof for any of the enumerated factors.

### 2.    Plaintiff Has Not Proven That Any Individual Had Final Authority to Establish Municipal Policy on Behalf of the MDC

"Municipal liability attaches only where the decisionmaker possesses final authority to

establish municipal policy with respect to the action ordered." Pembaur v. Cincinnati, 475 U.S.

469, 481 (1986).  Determining whether an official had final policymaking authority is a legal

question, to be answered on the basis of state law. Id.  The matter of whether the official is a

final policymaker under state law is "to be resolved by the trial judge *before* the case is

submitted to the jury." Richardson v. Metropolitan District Commission, No.300CV1062, 2003

---

[9] Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....42 U.S.C. § 1983 (1979).

U.S. Dist. LEXIS 12757, *20 (D.Conn. July 23, 2003) (citing to <u>Jeffes v. Barnes</u>, 208 F.3d 49

(2d Cir. 2000). Mere authority to exercise discretion when implementing policy is not sufficient.

<u>Pembaur</u>, 475 U.S. at 485. Indeed, "when a subordinate's decision is subject to review by the

municipality's authorized policymakers, they have retained the authority to measure the official's

conduct for conformance with their policies." <u>St. Louis v. Proprotnik</u>, 485 U.S. 112, 127 (1988).

The plaintiff has failed to demonstrate that any one individual had final decision-making

authority during the relevant time period. It has been recognized in the District of Connecticut

that the MDC Board of Commissioners, composed of twenty-nine electors, manages the MDC's

affairs. <u>Richardson</u>, 2003 U.S. Dist. Lexis 12757 at *21 (stating that "[u]pon a review of the

charter and by-laws of the MDC, it is clear that the board is the policymaking authority for the

MDC."). Unlike the plaintiff in <u>Richardson</u>, the plaintiff failed to introduce competent evidence

regarding the charter or the by-laws of the MDC. The plaintiff, however, conceded at trial that it

is the Board of Commissioners, not Mr. Geldof or Mr. Moore, who is responsible for all

personnel decisions for the MDC. Accordingly, no one individual had the authority to establish

municipal policy for the MDC.

> 3.     <u>Plaintiff Has Not Proven that the MDC Ratified Any Individual's
> Discriminatory Conduct</u>

Having failed to prove that an individual had final decision-making authority for the

MDC, The plaintiff must demonstrate that the MDC ratified an individual's discriminatory

actions.

> The Second Circuit has found that a municipality may be liable under section
> 1983 when the injury was inflicted by its "lawmakers or by those whose edicts or
> acts may be fairly said to represent official policy." Additionally, a supervisor's
> acquiescence to the actions of his subordinates may amount to a policy or custom,
> if the subordinate's "discriminatory practice [is] so manifest as to imply the
> constructive acquiescence of senior policy-making officials." When a
> subordinate's decision is subject to review by the municipality's authorized policy

makers, "their ratification would be chargeable to the municipality because their decision is final."

Richardson, 2003 U.S. Dist. Lexis 12757 at *21 (citations omitted). See also Praprotnik, 485 U.S. at 127. The plaintiff offered no such evidence. The failure to demonstrate that the MDC Board of Commissioners ratified discriminatory conduct is fatal to the plaintiff's Section 1983 claim.

4.     Plaintiff Has Not Proven the Existence of a Widespread Custom of Discrimination

The plaintiff further failed to establish municipal liability by proving that a municipal policy or custom caused a deprivation. See Peters v. City of Stamford, No. 3:99-CV-764, 2003 U.S. Dist. LEXIS 4189, *30-*31 (D. Conn. Mar. 17, 2003). A "policy" is a "statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Id. A "custom" means a "persistent and widespread discriminatory practice . . . so permanent and well settled as to constitute a 'custom or usage' with the force of law." Id. The policy or custom need not be explicitly included in an enumerated rule or regulation; however, the conduct of an official, "whose edicts or acts represent official policy," may impose municipal liability under § 1983. Id.

> The Second Circuit has previously ruled that "a municipal policy may be inferred from the informal acts or omissions of supervisory municipal officials . . . and that 'municipal inaction such as the persistent failure to discipline subordinates who violate [persons'] civil rights could give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct,'" Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) (citing Batista v. Rodriguez, 702 F.2d 393, 397). See also Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (policy may be inferred from "evidence that the municipality had notice of but repeatedly failed to make any meaningful investigation into charges that police officers had used excessive force in violation of the complainants' civil rights"); Turpin v. Mailet, 619 F.2d 196, 201 ("where senior personnel have knowledge of a pattern of constitutionally offensive acts by their subordinates but fail to take remedial steps, the municipality may be held liable for a subsequent violation if the superior's inaction amounts to deliberate indifference or to tacit authorization of the offensive acts").

19

Richardson, 2003 U.S. Dist. Lexis 12757 at *23-*24.

As established above, the plaintiff presented no evidence at trial to support any correlation between either his race or his testimony in the Harper matter and any action taken by his supervisors, including the incident in which Mr. Geldof yelled at the plaintiff.  Indeed, as established at trial, the MDC promptly investigated and disciplined Mr. Geldof for inappropriately yelling at the plaintiff.  Notably, the plaintiff does not allege any further incidents of yelling at him by Mr. Geldof after the MDC imposed discipline.  Thus, the plaintiff has failed to show that the MDC Board somehow ratified any alleged discriminatory misconduct.

5.    Plaintiff Has Not Proven That Actions Taken Pursuant to Any Policy Deprived Him of Any Federal or Constitutional Right

Not only has the plaintiff failed to demonstrate the existence of a municipal policy or custom of discrimination, he has also failed to prove that any actions pursuant to such a policy deprived him of any federal or constitutional right.  See Pembaur v. Cincinnati, 475 U.S. at 482-83.  See also Webster v. City of Houston, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (stating that actions of municipal officers or employees do not render liability unless they actually execute or implement the unconstitutional policy).  The plaintiff has not demonstrated any federal or constitutional right to be reclassified or to receive specific job responsibilities. See Looby, 152 F.Supp.2d at 190.  "Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'"  Id. (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 539 (1985)).  "Although there is a recognized constitutional liberty right to pursue an occupation, the cases 'have consistently drawn a distinction, however, between occupational liberty and the right to a specific job. . . . It is the liberty to pursue a calling or occupation, and

20

not the right to a specific job, that is secured by the Fourteenth Amendment." <u>Looby</u>, 152

F.Supp.2d at 190 (citing <u>Wroblewski v. City of Washburn</u>, 965 F.2d 452, 455 (7th Cir. 1992)).

Finally, even if the plaintiff were able to demonstrate that he was deprived of a

constitutionally protected right, he is nonetheless barred from recovery because he has not

demonstrated that the deprivation caused his alleged damages. The unconstitutional municipal

policy or custom must be "the moving force" behind the plaintiff's deprivation to impose

municipal liability. <u>See</u> <u>Polk County v. Dodson</u>, 454 U.S. 312, 326 (1981); <u>Monell v. Dep't of</u>

<u>Soc. Servs.</u>, 436 U.S. 658, 694 (1978). Therefore, the recover under § 1983, a plaintiff must

show a close relationship between the enforcement or implementation of a municipal policy or

custom and his injuries. <u>See</u> <u>id.</u>   The plaintiff failed to present evidence to demonstrate this

relationship and his claim must fail.

## III.    **CONCLUSION**

For the foregoing reasons, The Metropolitan District Commission respectfully requests

that its motion for judgment as a matter of law be granted.

<div style="margin-left:40%">

DEFENDANT,
THE METROPOLITAN DISTRICT
COMMISSION


By: _____
James A. Wade (ct 00086)
E-mail:  jwade@rc.com
Stephen W. Aronson (ct 02216)
E-mail:  saronson@rc.com
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
Tel. No.: (860) 275-8200
Fax No.: (860) 275-8299

</div>

## CERTIFICATION

This is to certify that a copy of the foregoing was hand-delivered on this 10th day of

November, 2004 to:

Robert W. Heaghney, Esq.
Stuart E. Brown, Esq.
Hassett & George, P.C.
555 Franklin Avenue
Hartford, CT  06114

Stephen W. Aronson

22